Case number 08-1156, James Berglind v. Paintball Business Association, and all. Would you step up and identify yourselves and your clients? Good morning, Your Honors. Marnie Bozek on behalf of what I will refer to as the Paintball Entities, which consists of Paintball Business Association, National Sports, Entertainment, and Recreation Association, ILM, and the American Sports Development Group. Thank you. Good morning, Your Honors. My name is Jean Bolton, and I represent the Marglind Insurance Company. In your arguments, who's going to take the lead? I believe that I will take the lead. Okay. And will it be pretty much allocated as it is in your briefs so that you don't overlap unnecessarily? Yes, Your Honors. We'd like to reserve the right, obviously, to revisit to the extent there's something in addition, but we will do our best to endeavor not to. But you're coordinated so that you don't necessarily have to reinvent the wheel if it's already started rolling with your opponent's argument to make a crude attempt to stay consistent with the metaphor. Good morning, Your Honor. I'm Jack LaHane. I represent James Berglind, the father of Joseph Berglind, and the S&E of John Lennon Games. I should advise you before you begin your arguments that by reason of some technological breakdown, our taping mechanism is not functioning. So this is more of a blow to our law clerks than it is to you. But nevertheless, we all think that it's within the realm of your interest to be so advised, but we will proceed with the argument nonetheless. So with that, I think you also probably sat here during the first case where you heard the admonitions regarding our time constraints. And probably those admonitions were relatively flexible, so as not to feel that necessarily when your time is up, your 15 minutes are up, per se, that the game is over for you. But nevertheless, you should guide yourself on the basis that you're only entitled to 15 minutes per side. Everything else is a matter of privilege. And to the extent that we feel we need to hear some more, we will not pretty much – we don't know how to flick these buttons. We've never done it before in this division anyway. But it is getting late, so obviously that's not to be abused in any way. And you are going to allocate the time for the appellees between the two of you. Technically, it's still 15 minutes for the two, although, as I'm sure Justice McBride lets you know, that it's not totally tyrannical or inflexible. With that, why don't we have the appellant remain and start your argument. We do have one housekeeping matter that has come to my attention just this morning. Counsel advises me that there was a motion for summary judgment, a subsequent motion for summary judgment, that was actually in the summary judgment motion ruling by Judge Hall, but did not make the end of the appellate court record somehow. The clerk managed to miss that. What are you talking about, specifically what summary judgment ruling? …concerns Judge Hall with the in-court examination of the monotony of the games. Prior to that going forward, the parties agreed and stipulated that we would move to stay the oral examination of Mr. Montefiore and move for summary judgment on the issue of those other crimes. It was also agreed that Berkley would withdraw the motion that he had filed earlier and file a motion on the issue of those other crimes. As opposed to notice of suit? As opposed to notice of suit, as opposed to agency, as opposed to… How about the issues of agency as far as the paintball group is concerned? Has that been determined at all by any subsequent orders? No, sir. It has not. And that was specifically… So basically you have a summary judgment as far as notice of the occurrence. Do you have another notice of summary judgment in this file? And so what's the difference between the two? Well, what happened was Berkley withdrew the August motion for summary judgment that he had filed. He filed a new motion for summary judgment on November 21st of 2007. That was the same date on which we filed our motion for summary judgment based on the court's order relative to the motion to stay the examination. And that is also when the paintball entities filed their motion for summary judgment. Before we confer with each other as to what we wish to do, are the three of you content to proceed with oral argument now? Well… Are there new issues to be raised? Will the current briefs that you filed, as far as you're concerned, properly cover the area that is traversed now by this missing order? It's not an order. It's just a motion. It's just a motion? It's not a disposition? It shouldn't make any difference in this case. No, but let me just point out that Plaintiff Berkley is asking this court to overturn the lower court and grant summary judgment. My concern is that it's got to be a proper motion for summary judgment, the one that was reviewed and entertained. It's only Northland's motion? Not the one that was withdrawn. Okay, so the only motion before us is the Northland and the insurance agency's motion for summary judgment. Well, no, Judge Berkley filed the motion for summary judgment, too, and he is asking that, but the wrong one is in the record. Okay, but the wrong one is in the record. Yes, and I think that we're comfortable… Can't you supplement the record with that now, or don't you have the motion? Yes, we've talked about this this morning. All right. We can supplement it. I don't see how it makes a difference since there is a motion for summary judgment. The one that the court ruled on isn't in this record. Isn't that what you just told us? Yes, that's what Paul is saying, but the court is aware from looking at the record in this case. Every deposition is in there ten times. I think we understand what the issues are in this case. I don't think that the pleading is going to make a difference. No, and we're all going to stipulate that the record be supplemented to include that and one other motion that was filed with respect to that motion. All right. You should have brought that to our attention earlier, but can you do that in three days? Do you have the motion with you right now to hand up to us? I have one of the two, yes. I have the motion for summary judgment that should have been filed as Berglund's motion for summary judgment. It should have been listed in the record as Berglund's motion for summary judgment. But I don't see… I mean, the briefs are quite clear as to what the issues are. Why would that make a difference to anything? Well, it makes a difference only because the motion that was actually ruled on is a little bit narrower. It addresses a narrower issue. And if for some reason the court were to decide to grant the relief that counsel is requesting and grant summary judgment to him, it would be based on… And the wrong motion. The wrong motion. Okay. Unless we can… All right, so you'll supplement that within a couple days. Yeah, but do it within a couple days. Absolutely. And the supplemental record will be strictly the naked record without any editorial comment, which could also be called the supplemental brief. There will be no supplemental briefing, just the submission of the document itself evidencing that motion. That's what it will be. Okay. And there will also be one motion that the defense filed to strike portions of that motion. And that is now being stipulated between the three of you. Yes. Yes. It's already stipulated. There was no… And you'll have three days within which to make those submissions. Now, are we okay with that? We're okay with it. Okay? Yes. All right. Thank you very much. Then let's proceed as… I'd like to reserve five minutes for rebuttal, if I may. Sure. Your Honors, we're here on a disposition of a motion for summary judgment. Apparently not the right one, but we're here on the disposition of a motion for summary judgment. And it's a matter of de novo review anyway. Well, I'm not sure I follow your argument of de novo review in your brief, because de novo review may very well mean that we need not be deferential to any of the orders entered by the trial judge, either in terms of there's no manifest weight of the evidence or no other deference to be paid. On the other hand, that does not absolve you from the waiver that might ensue if you don't make a contention below. As far as now raising it fresh in your briefs, you may still be subject to waiver. It's probably optional on our part, although that is not totally clear-cut. It depends on the nature of the argument made and the extent to which there might be underlying estoppel type of issues where you might have led your opponents down a primrose path by not arguing it. But de novo review would not salvage that. No. But we don't have those kinds of issues present on this record in this case. I think we have a pretty fair understanding of what the issues were. I think they were rather thoroughly investigated. There's a considerable amount of factual material in the record that's available for the Court. Well, has the Court itself made any determinations as far as your theory of apparent authority or implied agency that are – for all I know, you're also – I gathered it to be an apparent authority argument or an implied authority rather than an actual authority type of argument. But has the – as far as you're concerned, has the trial court made any determinations as to that at all? I believe that the record reflects that they stipped to it. Well, as I understand it, the stipulation was not as to the actual relationship of the paintball group to Northland, but rather the stipulation was as to what will be argued in your appeal. I don't know that – was there a stipulation below that there was, in fact, an agency relationship between the specialty and Northland? I didn't gather that from the briefs. My understanding is that's exactly what there was, and more than that, that there is no real challenge to the notice. Well, I didn't gather that either from the briefs. All I gathered from the briefs is that they were going to argue the 11 months as – and not the 16 months or whatever it was before Northland received actual notice. Right, right. But that doesn't – that stipulation doesn't necessarily extend beyond the narrow bounds in the context in which it was made. Well, it does to the extent that – I mean, let's jump into that for a second. Remember, Paintball Business Association is the only entity that George Longfellow ever dealt with. Well, we're not going to argue this – make this argument right now on that. I mean, I'm not denying you leave to do that, but I think it's a shifting of gears because the first issue is what did you already stipulate to? Yeah, that's what we need to know. Was it that notice to ILM was notice to North? Is that the stipulation? That's what I understand the stipulation to be. Let's find out from the other side. Now, I want to interject here. What I understand is that the question that the trial judge decided was that the 11-month period was a breach of the notice as a matter of law. That was the sole and only issue, and they have not given up their right to try this case on notice. Should we find that? On the fact that the actual notice to Northland by Longfellow took place the following September as opposed to the preceding – what was it, March? February, the end of February. February, yeah. So I didn't gather that they threw in the towel on that issue other than for purposes of this appeal. Right, for purposes of that motion. Other than for purposes of the motion. I thought that was what the judge – what you all agreed upon, that if the court concludes as a matter of law that 11 months was breach, then there's no point in going further. They tried to compartmentalize this thing. Now there is some sort of issue here. Did your motion for summary judgment request that the court conclude that notice occurred to both and that the 11 months was too long – or that it wasn't too long, rather? I'm sorry. You're on the other side. We're on the other side. We don't think 11 months was too long. Right. You're asking that it be reversed, but I don't think, from what I've read, whether notice was given – the only issue is whether the 11 months was a breach. Now that was – Not to whom it was given. They stipulated that only for purposes of summary judgment, you know, was notice. Now this, in point of fact, as far as I'm concerned, to take it a step further, raises a jurisdictional question because, in effect, there was a total disposition by the trial court. So that would tend to invoke 301. Right. Okay, 301 and 303. However, I don't see how the action survives if we now determine that the 11 months is too long. It dies in the vine. However, if we should determine 11 months is not too long, that's where your opponents claim they nevertheless have a shot at survival, based on the gap between March and September. Well, I think also based – I think their contention, as I understand it, is more than that or different than that. I think they're reserving the right to rely on the separate notice of suit provision. Yeah, well, we're not talking – But let's take care of one thing at a time. They are not throwing in the towel that they die with our determination, if we should do so, that 11 months is not too long, based on the fact that they can still separate, as far as they're concerned, the paintball group from Northland, as far as the length of time is concerned, with respect to the issue of whether notice to the paintball group constitutes notice to Northland. Well, what happens at that point is you have a divergence. You have today the paintball group and Northlake joined at the hip. Once you decide that the 11 – But now you're getting into the substance. Right, but once you decide that question, there's a divergence. Well, and you're telling us that we could decide that issue, notwithstanding the limit to the stipulation. I am, and I'm doing – And the question is, have you argued that issue to a point of disposition with the trial court? Or is there more to be said and done on that particular issue, on the issue of agency? We don't necessarily want to make a determination, and I'm saying I'm using the term want instead of getting down to whether we even can, if we should want to. If you haven't completely disposed at the trial level of the factual issues pertaining to apparent authority. Well, I think what happened here is you have – Or implied authority, or implied and fact authority. It draws me back to my law school days. That always gives me a headache when you start going into implied and fact authority. But what we have here is a – and it is kind of convoluted. I think the trial court – and we did make this point rather improperly. Improperly is maybe too strong, but I think really unnecessarily tried to parse these issues to such a fine point that they really are taking things in isolation that need to be considered more or less together. Not that the conditions, not that the notice provisions are not independent obligations, because they are under the case law, and not that the agency issue isn't something that has to be considered under the law, which it does, but you can't really consider any of those in complete vacuum, which is what I think the insurance company would like to have us do here and what I think they argued to Judge Hall that they should do there, and I think that that's inappropriate. You can't consider, oh, well, if we lose on this, we've got another ditch straight behind that and we've got another ditch behind there. You can't dig three or four ditches on these things and set up these defenses all that way because you have too much in a relationship among these issues. Well, I think we have to face only one issue here, and that issue is whether we have a final judgment. And if we have a final judgment, then if we should reverse on the grounds that the trial court issued the final judgment, there is then a remand. And does the remand preclude the trial judge from considering any other defensive issues by the carrier? Right. And my understanding is that the defense that they've preserved is the notice of suit provision. The agency thing they more or less agreed to. There was a reason for it. I would have to get into the substance of it to point out to you that, you know. Well, did they agree to the agency issue or did they agree only that their appeal would be taken, predicated on the lapse of time between the occurrence slash suit and the notice to specialty groups? If I understand your question, Your Honor, I don't think you can really separate them to that extent. And that's a concern that I raised in the brief. You can't put this in complete isolation. You have, and what I point out is, you have policy language here. And let me just get into this for one second. Well, let me just tell you, Mr. Lane. You know, from past experience with you having appeared before us, I have no question in the world that you're a very honorable man. But we have to have a clear sense of, and it shouldn't be in the form of testimony from you, but in terms of the record. What is it in the record that provides the scope and limit of that stipulation? And we'll, of course, have your opponents will obviously have their chance at telling us. I would say that the issue that the Court has identified. Because if you've limited that stipulation, can you now renege? I don't think it's a renege. I think it's, you know, I wouldn't do that. I think that what we have here is a, you can't, I think you're putting a gloss on that that probably is inappropriate. I'm not sure that. Okay. All right, I'm willing to listen to that. My ears are up on the word inappropriate. Okay. And I think that what happens when you talk about the stipulation is I think the stipulation was understood in the sense that they were separating their defenses of notice of occurrence and notice of suit, that they were stipulating that the notice to the agent, to PBA, constituted notice for purposes of the motion for summary judgment. Okay. That means it's still, that 11-month is the only period that they want to consider. They don't want to consider the additional seven months beyond that before Northlake finds out about the suit, because the PBA never told them. And that's the other problem that you have here. I mean, you've got a seven-month situation following the notice of the occurrence coming to notice of suit and notice of occurrence coming to the agent who does nothing, has no clue, in his own words, what to do with the motion for default and, in fact, does nothing. Well, you know, I think we should really get to the issue here. Now, the other side has relied on the 11 months. We're not talking about seven months after that. There's nothing like that in the briefs. You know, this is the 11-month period. They've agreed for purposes of the summary judgment motion. At least that's what I've gathered from the briefs, that the court was focusing on whether the breach occurred from the 11-month delay. And they just said, for purposes of this ruling or the motion, we're going to stipulate that the notice to one was the notice to the other, only for this limited issue. Because the 11-month, if it's a breach, disposed of everything. So, I mean, you know, I think we should proceed here. Okay. But, I mean, you can't. I guess we could. I think at the trial court level, Mr. Lahane, if you were objecting to how the court was perceiving a ruling and that you wanted to explore all these other issues at the hearing, then that should have been taken care of there. But maybe, you know. No, what I'm saying is that you're considering an 11-month period and the propriety of that 11-month period. I agree that that's the only issue in front of us. We don't have to worry about the September notice to the insurance company. But you want to nail that down right now so that only the 11-month can be ever considered in the entire course of the litigation here as well as below. That's what you're attempting to do. It strikes me that as a matter of law, as a matter of contract construction, as a matter of the language of the policy, as a matter of precedent from Burgos on down, yes, but I'm not asking you to do more than do what the law already says. I'm not asking for anything new or different. Of course that was the only entity he ever dealt with, and the notice to the one was notice to the other. I mean, that's just what the law in this state provides. And it's important. The reason it was raised in the brief and the reason it was highlighted in the reply is you saw that there was no response on that point at all. But I think the consequence to you of pressing this issue here is the fact that if you're asking us to nail down the apparent authority of the paintball entities, the apparent agency of the paintball entities, you're also, whether you know it or not, inviting us to consider the 18-month gap if we should reject your contention of an agency relationship, at which point we will not be confronting 11 months or we'll be in a very crude situation of being forced to confront 11 months when we know it's 18 months. I see what you're saying. I mean, obviously the briefs are focused on the 11-month period. We raise that because I think we have to. What we're talking about really now is the scope of the remand, and obviously I'd like to have the remand be as very direct as possible. But, you know, I understand what you're saying. I understand your resignation. It's a two-edged sword. I mean, I understand. But we're talking about how the case is remanded, not, you know, at this point we haven't even begun to talk about whether it should be. But I agree with Justice McBride. It's time to get into the subject of this appeal rather than its periphery. Okay. And the point is that let's start with right at the beginning. The policy language, which controls everything, you must see to it that we are notified. It's a passive, you know, we are notified, that we get noticed somehow, as soon as practicable of an occurrence which may result in a claim. Not every incident must be reported. Not every incident should be reported. The Supreme Court in the Barrington High School case, and this Court in the American country insurance case. Yeah, but what does that have to do with what we're talking about here? I think he's going on from there. Okay. It says specifically that an insurer does not have an obligation to report every single incident. Yeah, but that's not the question of the issue here, is it really? Yes, it is. Because the issue that was in front of the Court, the issue that clearly everybody agrees is here, is whether Longfellow messed up by failing to tell his insurance company sooner about what happened at the birthday party, what happened to Joe Berglund's eye. How come on his deposition nobody asked Longfellow whether he received a notice of attorneyship? Well, I don't know why they didn't do it. But I do know that if there was a notice of attorney lien, it sure as heck would have been marked as an exhibit and tender. Because that's an important point. One of the things that we stress very highly here is that there was no communication between the family and Adrenaline for that entire period of time. The first possible contact period of time is the sheriff's service, which is disputed. Longfellow denied that he ever received the summons. The first thing he acknowledges receiving is the motion for default from Mr. Naval. Well, you know, I don't know that he denies or he didn't receive the summons. I think he says he doesn't recall receiving the summons. Then he filed an affidavit in another case where if I did receive it, it was a busy time. I may have put it over here. I may have put it over there. So that may be a question of fact, did he receive the summons or not. But nobody represented this man. Nobody came in on a motion to quash. Nobody did anything for his rights. That's right. And still nobody's doing anything for his rights. Well, what happened in that situation, Your Honor, let me point that out. We don't want to talk about that 18 months, I know. But the fact of the matter is that the insurance company gets notice, according to their own statement, on September 2. They receive a letter from – They received a phone call on September 1 and notice on September 2. Yeah. September 2 is when they actually get something in writing, they said in their brief. And what they get is, you know, now they find out about the default several months after it's been entered. However, they have time to engage counsel. They have time to put together a complaint for declaratory judgment. They have time to get it on file. You know, the motion, the 214-01 decision was still pending before judgment. However, that all takes place after the default, doesn't it? Yes. Yes, it does. And there's case law that pretty much makes the occurrence of default a cutoff point. In terms of prejudice. Yeah, right. There are cases that say that. I would say, however, that the insurance company had about 6.6 million reasons to jump in and pursue both the coverage aspect of the case and the 214-01. You know, I'm not going to run down counsel, but I would think that the insurance company's counsel would probably be in a much better position to pick up and run with a 214-01 petition. I know this isn't one of our issues, but how soon after that jury verdict of 6.6 was the motion to vacate under 214-01 filed? I don't know exactly when it was filed. I do know it was disposed of in November. The verdict was entered in May. I believe it was filed in July, but I can't tell you that for a fact. The verdict was entered in May. May. You think it was filed in July. Yes. Jury proof up was May 21. Right. And the court denied the motion to vacate in November. That's correct. November 16th. That one I've got ready to hand. So they had every reason to. They could have gone both ways. They didn't. They chose to put all their chips on the one side. The case law does say, you know, you've got a number of factors to consider and that there is no exhaustive list of factors. How does what the insurance company chose to do in September play onto your argument exactly? What bearing does it have? Are we talking about prejudice? Yes. At that point in time, although I understand the case law your Honor is referring to, they're really not yet prejudiced because the 214-01 is pending. They're going to claim that when you have 18 months, prejudice is not a factor anymore. And how do you respond to that? I respond to it by saying. Before you even get into the question of prejudice, don't you have to get into the question of the notice first, whether the notice was reasonable? Yes. Before we get into prejudice. Well, it's a question of. But Justice Gordon, that's what I invited him to discuss because I disagree with that point. I think it's. I think your point is more correct than theirs because I think that your opponent's point. This is a softball to you, but obviously my mind is open. But as I read Lavorsi, prejudice is never a non-factor. Right. Except that its influence, its impact is inversely correlated to the length of time that expires. But you never have a determination that something is unreasonable without putting prejudice into the mix that determines reasonability. So if you say it's unreasonable, then you're begging the question because we don't know that it's unreasonable until we determine the impact of prejudice, albeit the impact of prejudice is of lesser significance as time elapses. That's how I am. And I think I agree with that. Well, I think you would want to agree with it, but your opponents have taken a different position in their briefs. Well, the point is that in terms of the prejudice factor, which remains one factor to consider under Lavorsi no matter what, I think, and that's what you just said, is in September they're not unduly prejudiced. Now, of course, we focused in the briefs on February, February 27, because that's the 11 months. They're certainly not prejudiced at that point. There is no default judgment. There is no default even at that point when PBA-SIS gets noticed. The release is still available. The broken barrel sock or barrel condom, as they called it, is still available. All these things, the physical evidence exists. The release exists. All these documents and so forth exist. Well, I mean, aren't you really talking about the extent of prejudice? How could you deny some prejudice, which in a logic course some could mean all and could mean a fraction, some prejudice by virtue of the fact that there's been a prove-up in this case and a denial of a 1401 petition? I mean, it's a – as lawyers, you know that that raises the hill from 500 feet to 5,000 feet, at the very least. No argument. It certainly makes it much more difficult. It would be much easier to make a default before a default prove-up has happened. So isn't that prejudice? It's some prejudice, as you just said. Okay. But it's not all prejudice. But it's prejudice. It's some. Some prejudice is prejudice. Of course. Okay. It's some. But it's not all. And it's not dispositive. And there was an opportunity that they did not choose to avail themselves of. That's all I'm saying on that factor. That's really the core of the argument there. They could have done something. They chose to do something different. But that is not your only argument. Not at all. Once you carry it into agency, which at least for our purposes is not something we need to consider, we only need to consider 11 months, that notice in 11 months came before default. Precisely. Precisely. And at a time when the record has established that all those things are available to release. Nathan Smith testifying that the release was illegible, that he got received by fax, but he never asked for a better copy. There was the barrel sock that George Longfellow preserved. He had all those things at one time. There was a complaint, if you noticed later on in the record, where they said, well, we don't have the release in front of us now. Well, that's not, not only is it not George Longfellow's fault, it's certainly not Joe Berglund's fault. Now, the other, you know, we've talked about. It's not a matter of Joe Berglund's fault. It's a matter of George Longfellow's fault. Joe Berglund stands in the shoes of Longfellow, notwithstanding your valiant try at giving him his own persona in this litigation. Well, Your Honor, with respect, any liability, you know, any liability insurance contract is interpreted like any contract in light of the law that exists at the time of his execution. And, frankly, one of the. . . But his rights are derivative of Longfellow's. That's right. But the law is that the liability insurance contract is effectively a private contract, but it does have a public purpose for the protection of persons, third parties, such as Joe Berglund. That's as far as that argument goes anyway. It's not. . . The other factors we wanted to talk about, the sophistication argument, a lot of paperwork was devoted to that. But the bottom line is George Longfellow was not exactly, you know, Mr. Godrocks. He did not do. . . He was not a captain of industry. He was a guy who failed at a number of different jobs. And, you know, this was the latest in a long line of businesses. But failure alone is not the test. Otherwise, the chairman of the board of AIG would not be sophisticated. Well, that's true. That's true. And we kind of made that point sort of the other way in the brief, but. . . Well, you know, all these factors are generally questions of fact anyway, aren't they? Yes. But they were decided as a matter of law here. But in order to decide the matter of law, you have to review the questions of fact. That's why it's a noble review. And those facts that were considered and, you know, we're stressing on the extent of the injury on the one side. We're saying, wait a minute, that's not the only thing that should be considered. And I think that that's the primary focus on the other side. I mean, a huge factor here is what is reasonable for George Longfellow to believe at the time of this injury whether or not anything is going to come of it. Right. If he knows for the record that he never heard from the family, everything seemed to be under control, the child left, you know, went to the hospital, but never heard from them again. Right. And that's huge. The other thing that's very important is he had this release. Now, you see, on the release, I consider the argument on the release to carry weight, except first your opponents argue that he never mentioned waiver as any of his reasons for the delay. The other side of it is that you're conceding a certain sophistication to him by arguing that he relied on the waiver. That would mean that he was sophisticated enough to rely. So you're kind of going back on yourself with that. Well, I'm thinking, you know, we talked about, you know, whether the defense would put a reasonable lawyer standard on the interpretation of this. All I'm saying is that, you know, he thinks that because he gets a piece of paper signed by everybody who goes out in the field. But why should we presume that he relied on that if he never raised it in any discovery? I think it's a fact that the court can look at, and I think it's an important fact. And his deposition, he didn't say he relied on the waiver. No, he didn't. So that's just your argument that he relied on the waiver. Well, I think, yeah. Sometimes lawyers have to contribute something. People have to testify what they rely on. You know, it's just like people who want Chinese food over some other kind of food. I mean, you can't tell what somebody else wants. Justice, I can't argue with you except that, you know, I've got to add some value here, some value. Okay, you're right. Well, the question is whether it's totally subjective in this determination, which it seems to be. And subjective rather than objective. So if it's not objective and we can conclude that he didn't attribute anything to a waiver, then it's a factor that we have to give a very low quotient to. Well, the question is, when you talk about subjective or objective, whether or not, when you look back at the facts that are established by the record, whatever those facts are, whether you look at them as what a reasonable person in George Longfellow's shoes should have done, an objective standard, or whether you look at it solely through the eyes of George Longfellow, which is a subjective standard. I think that the case law probably leans more towards the objective side, which is really the reason why we mention all these other factors that come into account. It seems to me that you don't just take the person's word for it. You see, if he were really sophisticated, then he could have another argument. But nobody has raised that. The argument being that this is really a product case, not a case against the plaintiff because it's that sock. Well, we pointed that out as well. And, frankly, that is something that from an objective standpoint, again, not viewing it through George Longfellow's eyes, but looking at it as the facts that are established by the record and what a reasonable person might have thought in George Longfellow's shoes. I'm going from eyes to shoes. But a reasonable person in George Longfellow's shoes might have considered that possibly a product case, might have considered it a freak occurrence that has nothing to do with him because it had nothing to do with the conduct of play on the field. It was another kid at the party who accidentally discharged the paintball gun in the first place. He may have thought, or a reasonable person in George Longfellow's shoes may have thought, oh, well, that wouldn't be something that would come back to me. They might sue the parents of the kid who pulled the trigger. Those are the kinds of factors that if you look at it on a solely objective standpoint, maybe you get into it. The other factors, briefly, I see you look at your watch. I'm doing it before my colleagues start looking at me. Once I see you do that, then I'm going to wrap up real quick. The only other factors that I wanted to stress was the contact sport aspect of it. I understand this isn't on all fours with Farrington High School. I realize that. But it's still a contact sport. There's specialized equipment involved, just like as in a gym class where there's specialized equipment involved. You do expect a certain level of vigorous activity, and the possibility of injury is heightened, and therefore the expectation that an injury may occur. But there the school district had no clues at all because even though he wanted to get excused from gym, the reason wasn't given. Then there was another note without giving any kind of reason or reference. In fact, there was at least one letter that was sent to the school district there, that was a copy of the letter sent to the Lake County superintendent that complained about insurance coverage, but it did not specifically address that, which is a little more contact than we actually have here between the time of the occurrence and the actual notice to PBASAS. With that, I'll stand on my briefs, reserve my time for rebuttal, and sit down quickly before I go. Thank you, Mr. Ubaldi. Thank you. What do you have to say about Mr. Longfellow's sophistication? Well, I would love to talk about that. I have many things to say. However, I would like to go back to the issues that the justices raised initially about what was presented to Judge Paul, if that's okay, just so that I can make sure. As far as I'm concerned, whatever you want to do. Make sure I get this out. But in the meantime, Mr. Longfellow is not getting a broader education. Acknowledged. At the time that the parties agreed to pursue summary judgment, as I outlined earlier, discovery remained open. There are multiple issues that have been raised by both Northland and the Paintball Association, including compliance with other provisions of the policies, including validity of the underlying judgment. There are any number of issues. Well, it does raise a very, to me at least at this moment, and I frankly haven't thought about it long enough for me to be bottom lining it, but it raises a kind of a sensitive jurisdictional issue. Because if the case comes before us on an 11-month test and still has no end when we're done, is it really a final order that's being appealed from? Or is it like an appeal from a partial summary judgment, which would be interlocutory in nature, and require a 304A certification? You know, we can't duck these problems. Whether you guys bring them, I'm sorry to use that familiarity, whether you bring it up to us or not, we have to recognize it on our own. We're bound to. See, that's what happens when lawyers stipulate to something without thinking about our jurisdiction.